FILED
2014 Dec-19  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELVIRA SCOTT PEARSON, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 2:13-cv-01960-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Elvira Scott Pearson ("Pearson"), appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Pearson timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. § 405(g), 1383(c)(3).

Pearson was fifty-three years old at the time of the Administrative Law Judge's

("ALJ's") decision, and she has a high school education. (Tr. at 40.) Her past work experience includes employment as a day care worker and motel clerk. (Tr. at 39, 170, 176.) Pearson alleges that she became disabled on December 1, 2009, due to seizures, degenerative joint disease of the lumber spine, left wrist osteoarthritis, depressive disorder, anxiety disorder. (Tr. at 70.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is engaged in substantial gainful activity, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.  *See id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant

work, the evaluator will make a finding of not disabled.  *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.; see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Pearson meets the insured status requirements of the Social Security Act through December 31, 2014. (Tr. at 30.) He further determined that Pearson has not engaged in substantial gainful activity since December 1, 2009, the alleged onset date. (*Id.*) According to the ALJ, Pearson has the following "severe" impairments: seizure disorder, depression, generalized anxiety disorder, and left carpal tunnel syndrome. (*Id.*)  However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.(Tr. at 32.) After consideration of the record, the ALJ found that Pearson has the RFC to perform light work as defined in 20 CFR § 404.1567(b) except that due to a combination of mental and physical impairments, she could never climb ladders, ropes

or scaffolds, could perform other postural activities only occasionally, would be limited to frequent but not constant handling in the left upper extremity, should avoid work around all hazards, should not be required to drive, would require simple routine tasks, occasional contact with the general public, co-workers and supervisors, and could manage only occasional changes in work setting. (Tr. at 34.)

According to the ALJ, Pearson is unable to perform any of her past relevant work and she is an "individual closely approaching advanced age," as that term is defined under the regulations.  (Tr. at 39.) The ALJ determined that transferability of skills is not an issue in this case.(*Id.*) Because Pearson's ability to perform all of the requirements of light work has been impeded by additional limitations, the ALJ used the testimony of a vocational expert ("VE") to find that there is a significant number of jobs in the national economy that she is capable of performing, such as housekeeper, electrical assembler, and small product assembler. (Tr. at 40-41.) The ALJ concluded his findings by stating that Pearson "has not been under a disability, as defined in the Social Security, Act, from December 1, 2009, through the date of this decision. (Tr. at 41.)

II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for " despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Pearson contends that the ALJ's decision should be reversed for four reasons. First, she alleges that the ALJ erred in giving little weight to the opinion of her treating physician, Dr. Rebecca Lockhart.  Second, she quarrels with the weight given to the opinions of the one-time examining consultative psychologist, Dr. Sally Gordon, and the non-examining state agency physician, Dr. Robert Estock.  Third, she argues that she should have been found disabled under Medical Vocational Rule 201.14.  Last, she alleges that the ALJ failed to adequately consider her obesity in determining her RFC.

A.     Weight Given to the Opinion of the Treating Physician

Pearson contends that the ALJ improperly evaluated her treating physician's opinion.  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the

evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 404.1527(d). A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)). "[A] physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford*, 363 F.3d at 1169 (internal quotations omitted). The ALJ has discretion not to give an opinion controlling weight if it is not well supported by medical evidence or is inconsistent with other evidence. *See* S.S.R. 96-2p, 1996 WL 374188 at *2.

Dr. Lockhart saw Plaintiff nine times between January 2009 and February 2012 for intermittent issues such as abscesses, allergies, and pelvic pain. (Tr. at 239-46, 337-38, 410-19, 430-31.) Dr. Lockhart also completed an evaluation form in September 2011, opining Plaintiff could lift no more than five pounds occasionally, sit for two hours total in an eight-hour workday and stand for two hours total in an eight-hour workday, only occasionally perform fine manipulation, and never push or pull or perform any climbing, gross manipulation, bending, stooping, or reaching, and could not operate a motor vehicle, work around hazardous machinery, or work around dust,

allergens, or fumes. (Tr. at 38-39, 395.) Dr. Lockhart additionally opined Plaintiff had fatigue or weakness that was virtually incapacitating and that required bed rest and/or medication. (Tr. at 39, 396.) The ALJ acknowledged Dr. Lockhart was a treating physician but noted the record evidence did not support the significant limitations she assessed. (Tr. at 39.)  Accordingly, the ALJ gave little weight to Dr. Lockhart's opinion because of its inconsistency with the evidence as a whole. (Tr. at 39.)

Substantial evidence supports the ALJ's consideration of Dr. Lockhart's opinion. Plaintiff's treatment notes, including those from Dr. Lockhart, did not show findings to support the limitations Dr. Lockhart assessed. For example, none of Dr. Lockhart's progress notes reflect back on extreme exam findings that would warrant such severe limitations in lifting, sitting, standing, and postural activities. (Tr. at 239-46, 337-38, 410-19, 430-31). Of Plaintiff's nine visits to Dr. Lockhart between January 2009 and February 2012, back pain is referenced only once, in February 2012, in which Plaintiff reported a back ache was "better" and Dr. Lockhart noted no extremity, back, or neurological abnormalities upon examination. (Tr. at 430-31). Plaintiff complained of pain only one other time, in September 2010, and reported pain in her "ovaries" rather than any musculoskeletal pain that would affect lifting, sitting, or standing. (Tr. at 337). Dr. Lockhart ordered an ultrasound that showed a

uterine fibroid, and records relating to subsequent visits throughout 2011 failed to show any further complaints of ovarian or pelvic pain. (Tr. at 407, 410-19).

Moreover, and as noted by the ALJ, the other medical evidence of record similarly fails to support the significant limitations Dr. Lockhart assessed.  (Tr. at 34-36, 247-336, 371-94). Plaintiff's earlier records from 2005 and 2006 primarily showed treatment for seizures and hypertension, through the hospital and treating physician Gregory James, M.D. (Tr. at 35, 290, 293-94, 297-302, 304, 307, 309, 313-18, 333-36). However, an April 2006 brain MRI showed no abnormalities, and Dr. James's records between October 2006 and August 2010 showed minimal, sporadic treatment, with Plaintiff reporting no seizures even when taking decreased dosages of her seizure medications and only infrequent seizure activity even when not compliant with her medication. (Tr. at 35, 294, 327-28, 330-32).  In sharp contrast to Dr. Lockhart's opinion limiting Plaintiff to less than sedentary activities, Dr. James's treatment notes also failed to show any significant physical findings, including unremarkable neurological, gait, strength, and motor findings. (Tr. at 327-28, 330-33). Plaintiff's hospital records between November 2007 and August 2012 also failed to show treatment for any complaints of back or extremity issues, and showed unremarkable back, extremity, and neurological findings, including normal range of motion and motor strength. (Tr. at 247, 251-61, 266, 372-73, 377).

Similarly, Plaintiff was examined by consultative examiner Dr. Raveendran Meleth in October 2011, and those exam findings failed to show anything significant to support Dr. Lockhart's opinion. (Tr. at 400-01). Although Plaintiff reported to Dr. Meleth that she used a brace for her left carpal tunnel syndrome and a cane sometimes and complained of back pain that worsened with prolonged sitting, standing, and walking, Plaintiff had not undergone an EMG or nerve conduction study or received any injections for her carpal tunnel syndrome and was not taking any medication for her complaints of back pain. (Tr. at 34-35, 398-99). Dr. Meleth observed Plaintiff could get up and walk independently, could stand on her toes and tandem walk, and could squat. (Tr. at 400). Plaintiff also had generally unremarkable range of motion in her back and joints, negative straight leg raising, full 5/5 strength in all extremities, and normal sensation and reflexes. (Tr. at 400-01).

Plaintiff points out that Dr. Lockhart prescribed several medications for Plaintiff.  Yet Dr. Lockhart's prescription history with Plaintiff does not contradict or otherwise undermine the ALJ's accurate observation that the limitations Dr. Lockhart assessed were still inconsistent with and unsupported by the medical evidence of record, including Dr. Lockhart's own treatment notes.

Plaintiff also contends Dr. Lockhart's opinion was consistent with the opinion of the one-time examining consultative psychologist Dr. Sally Gordon, who conducted

a mental status exam of Plaintiff and issued an opinion in November 2010 to which the ALJ assigned some weight.  (Tr. at 342-44).  However, Dr. Gordon did not make any assessment of Plaintiff's physical functioning, let alone assess Plaintiff with physical limitations that would restrict Plaintiff to less than sedentary work, so Plaintiff's assertion that Dr. Lockhart's opinion was consistent with Dr. Gordon's is incorrect.  (Tr. at 342-44).

In sum, because Dr. Lockhart's opinion was inconsistent with her own treatment notes and with the other medical evidence of record, which indicates treatment primarily for other conditions unrelated to any complaints of back or extremity problems, the ALJ had good cause to give Dr. Lockhart's opinon little weight.

B.   Weight to Opinions of One-Time Consultative Psychologist and Non-Examining Reviewing Physician

As noted above, the Commissioner will evaluate every medical opinion received, including non-examining sources.  20 C.F.R. § 404.1527(d).  Factors considered by the ALJ in deciding the weight to be given to any particular medical source include the examining relationship, the treatment relationship, the length of the treatment relationship, the nature and extent of the treatment relationship, whether the opinion is supported by objective evidence, whether the opinion is

consistent with the record as a whole, and the specialization of the medical source. *Id.*

As mentioned, consultative psychologist Dr. Sally Gordon evaluated Pearson's mental status on November 1, 2010, at the request of the Commissioner, in order to address an insufficiency in the record pursuant to 20 C.F.R. § 404.1512(f). (Tr. at 342.)   Dr. Gordon assessed Plaintiff with some mental limitations, but the ALJ determined that her opinion was only partially consistent with the evidence of record and gave it only some weight.  (Tr. at 38.)

Substantial evidence supports the ALJ's consideration of Dr. Gordon's opinion. Dr. Gordon opined that Plaintiff would have moderate difficulty in managing the demands of competitive work, had poor attention and concentration, and would have difficulty responding to mild pressures at work, though she also opined Plaintiff could maintain amicable relationships with co-workers and supervisors and could manage the responsibilities of independent living. (Tr. at 38, 344). Yet the record evidence, including Dr. Gordon's own exam findings, were not consistent with the more severe limitations in Dr. Gordon's opinion. Indeed, Dr. Gordon found Plaintiff had good insight and full orientation, was alert and attentive, and successfully executed a three-stage command, learned four words in a single trial, and repeated up to four digits forward and three backward. (Tr. at 33, 37, 343). Dr. Gordon also assessed

Plaintiff with intact recent, remote, and immediate memory, average fund of information and calculation skills, coherent thought processes, and appropriate thought content. (Tr. at 33, 37, 343).

The other record evidence similarly fails to support the more severe mental limitations Dr. Gordon assessed. As the ALJ noted, Plaintiff received medication to treat her mental symptoms, but had never received counseling or any more serious treatment. (Tr. at 36, 239-46, 337-38, 342, 410-19, 430-31).  In addition, Dr. Estock, the non-examining state agency physician, indicated that Plaintiff had only moderate limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychological symptoms, performing at a consistent pace, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the worksetting.  (Tr. at 38, 367-68). Accordingly, Dr. Estock assessed Plaintiff with an RFC to handle simple but not detailed tasks, tolerate non-intense interaction with the general public and casual interaction with co-workers and supervisors, and infrequent, gradual changes in the work setting. (Tr. at 369). Dr. Estock also opined Plaintiff could complete an eight-hour workday, but may miss one to two days of work each month. (Tr. at 369). The ALJ declined to give Dr. Estock's

opinion controlling weight in light of the fact that he did not examine Plaintiff, but still gave it substantial weight given its consistency with the record. (Tr. at 38). *See* 20 C.F.R. § 404.1527(e)(2)(state agency physicians are highly qualified physicians who are also experts in Social Security disability evaluation); SSR 96-6p 1996 WL 374180 (S.S.A.).

Plaintiff challenges the ALJ's consideration of Dr. Estock's opinion by suggesting at one point that the ALJ should have adopted more of Dr. Estock's opinion and arguing later that he should have given his opinion only little weight. With respect to her assertion that Dr. Estock's opinion was entitled to only little weight because he was merely a non-examining physician, the Commissioner's regulations clarify that opinions of non-examining sources may be given great weight, provided evidence in the record supports the non-examining source's opinion. *See* 20 C.F.R. § 404.1527(c), (e).   As such, there is no merit to the argument that Dr. Estock's opinion was entitled to little weight simply because he was a non-examining physician.

With regard to Plaintiff's argument that the ALJ should have adopted more of the limitations noted in Dr. Estock's opinion, specifically regarding his opinion that Plaintiff would miss one to two days of work each month, the record does not indicate Plaintiff's mental condition would have caused her to be absent from work once or

twice a month if she was only required to perform work that accommodated the mental and social restrictions the ALJ already included in his RFC finding. Given the evidence regarding Plaintiff's mental condition, particularly the conservative treatment she received for management of her mental symptoms and the unremarkable mental status findings in Dr. Gordon's exam, and the fact that the ALJ already restricted Plaintiff to simple, routine tasks, only occasional contact with others, and only occasional changes in the work setting in his RFC assessment, the ALJ did not need to also include in his RFC finding Dr. Estock's opinion that Plaintiff's impairments would cause her to be absent from work once or twice a month. An RFC finding that included that aspect of Dr. Estock's opinion over and above the limitations the ALJ already included in his RFC finding would not be supported by the medical findings and would be inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c); *Crawford*, 363 F.3d at 1159-60. Additionally, there was no error in the ALJ's decision not to give Dr. Estock's opinion controlling weight or to wholly adopt it because Dr. Estock did not examine Plaintiff, because the regulations list the source's examining relationship with the claimant as one factor to consider in weighing a medical source opinion. *See* 20 C.F.R. § 404.1527.

In sum, substantial evidence thus supports the ALJ's consideration of the opinion evidence of record as part of his assessment of Plaintiff's RFC. Plaintiff's

exam findings showing generally unremarkable physical and mental functioning, and conservative treatment with medication for Plaintiff's mental symptoms, support the ALJ's decision to give only some weight to Dr. Gordon's opinion that Plaintiff had poor attention and concentration and would have difficulty responding to mild pressures and stressors at work but could maintain relationships with her co-workers and supervisors[1], and substantial weight to Dr. Estock's opinion limiting Plaintiff to work involving only simple tasks, non-intense interaction with the general public and casual interaction with co-workers and supervisors, and infrequent, gradual changes in the work setting.

### C.    Obesity

Plaintiff asserts that her obesity should have resulted in an RFC of only sedentary work, rather than the limited range of light work the ALJ found in his RFC assessment.  Plaintiff points out that Social Security Ruling 02-1p recognizes that

---

[1] Plaintiff mentions in passing that the ALJ should have re-contacted Dr. Gordon rather than giving her opinion limited weight.  However, the regulations regarding re-contacting merely provide that if the evidence is insufficient to determine whether the claimant was disabled or not disabled, an adjudicator "may" re-contact a claimant's treating physician. *See* 20 C.F.R. § 404. 1520b(c)(1). Even under the old regulation, re-contacting was necessary only when the evidence was inadequate to determine whether the claimant was disabled or not disabled. *See Robin v. Astrue*, 365 F. App'x 993,999 (11th Cir. 2010). Here, the record contained sufficient evidence to evaluate Plaintiff's claim, without the need to re-contact Dr. Gordon.  The ALJ was still able to determine based on the record evidence, including Plaintiff's conservative treatment of her mental symptoms with medication and her unremarkable mental status testing in Dr. Gordon's exam, that Plaintiff retained an RFC to do a range of light work with limitations to simple, routine tasks, occasional contact with the public, co-workers, and supervisors, and occasional changes in the work setting.  (Tr. at 30-39.)

obesity can cause limitations in all exertional and postural functions and that it can affect an individual's ability to sustain routine movement and work activity.  However, Plaintiff fails to cite any evidence to support her assertion that her obesity further limited her work abilities, other than one reference to her weight established in Dr. Meleth's consultative exam and her body mass index ("BMI") of 42.6.  (Tr. at 399). Yet simply because a person weighs a certain amount or has a certain BMI does not mean she has work-related limitations.  BMI is nothing more than a number and does not establish or indicate a claimant's functional limitations. *See* SSR 02-01p, 2002 WL 34686281 (S.S.A.).  Plaintiff failed to cite any evidence to show her weight or BMI resulted in greater limitations than what the ALJ already included in his RFC finding, restricting Plaintiff to light work, with additional limitations. (Tr. at 34.)

D.      Medical Vocational Rule 201.14

Finally, Plaintiff maintains that she should have been found disabled under Rule 201.14 of the Medical Vocational Guidelines ("the grid rules").  The grid rules are a series of tables that constitute administrative notice of the numbers of unskilled jobs that exist throughout the national economy.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b).  If a claimant's combination of age, education, work experience, and RFC match one of the grid rules, the rule will direct a conclusion as to whether work exists that the claimant could perform.  *See id*.  However, "[w]here any one of [these]

findings of fact does not coincide with the corresponding criterion of a [grid rule], the [grid rule] does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a).

Rule 201.14 applies to a claimant who is restricted to sedentary work. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14. Here, however, the grids did not direct a conclusion regarding Plaintiff's alleged disability because her RFC did not match the requirements of sedentary work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). The ALJ found that Plaintiff could perform a reduced range of light work with other exertional and nonexertional limitations. Importantly, although Plaintiff could not perform the full range of light work, she had the ability to perform activities in excess of sedentary work. *See* 20 C.F.R. § 404.1567(a), (b) (defining sedentary and light work); SSR 83-10 (further defining sedentary and light work). In sum, Plaintiff's exertional capacity fell between light work and sedentary work. The ALJ thus recognized Plaintiff had limitations that precluded the strict application of the grids and he could use the grids only as a framework for his decision. *See* 20 C.F.R. §§ 404.1569, 404.1569a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2).

Plaintiff's contention that the postural limitations the ALJ included in his RFC finding "would better comport with a sedentary RFC" ignores the fact that the

regulations and rulings use the terms "sedentary" and "light" to describe the exertional or strength demands of a job, i.e., lifting, sitting, standing, walking, carrying, pushing, and pulling, not the postural activities required in a job, which are considered nonexertional demands. *See* 20 C.F.R. § 404.1567(a)-(b); SSR 83-14, 1983 WL 31254 (S.S.A.). Plaintiff fails to cite any authority for her suggestion that any postural restrictions equate to additional exertional restrictions.

Plaintiff also appears to contend the ALJ should have posed a hypothetical to the VE that limited her to a sedentary RFC because of her seizure disorder and a number of diagnoses listed in her consultative exam with Dr. Meleth in October 2011. However, a diagnosis alone says nothing about the severity of a condition and is not determinative of a plaintiff's ability to perform work-related activities. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Regardless, the record shows that the ALJ did consider Plaintiff's seizure disorder and Dr. Meleth's evaluation, along with the other record evidence, in finding Plaintiff had an RFC to do a range of light, not sedentary, work. (Tr. at 34-39). Accordingly, substantial evidence supports the ALJ's finding that Plaintiff could perform other work that existed in significant numbers in the national economy.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Pearson's

arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 19th day of December 2014.

L. Scott Coogler
United States District Judge

[160704]